of Judicial Review and the Attorney General's Office. May it please the Court, Strategic decisions of trial counsel, especially in deciding which jury charges to seek, receive significant deference and should not be second-guessed. But that's what the District Court did when it substituted its own judgment and granted relief. We're here in a posture of ebbedeference to a state habeas court merits ruling that Petitioner did not receive an effective assistance of trial counsel. The State Court determined that counsel did not perform deficiently. Indeed, counsel reasonably chose against seeking a double-edged, lesser-included offense instruction. And the State Court found no prejudice in that decision in light of the plausible trial outcomes. EDPA bars relief because Petitioner cannot show that the State Court was unreasonable. I'll start with prejudice because I think that's the most straightforward way to resolve this case. The Mejia opinion in my 28J is virtually dispositive on deficient performance. Turning specifically to ROA 131, that's page 27 of the District Court opinion, it says the State habeas court never recited or applied Strickland's reasonable probability standard. That's just wrong. The State habeas court quoted and applied that standard on page 1148, again on page 1150 of the record. It's quoted. It's the standard. And the conclusion that robbery would not have resulted in a different outcome on page 1152 of the record reflects that. And the question is, was it reasonable to conclude that there were really just two ways of resolving the key fact question in this case? If the jury didn't believe the victims about the knife, was it reasonable to think they wouldn't have believed them about fearing injury? That equals acquittal. If the jury believed the victims feared injury, it's reasonable to think it was because the knife was a deadly weapon. That equals an aggravated robbery conviction. So it was perfectly reasonable, as the State habeas court found, to find no prejudice in omitting a plain robbery instruction. And I think that's especially true in light of the sole defense witness's testimony, which set up an unusually stark dichotomy with the testimony of the two victims. The brothers, Jose and Ruben Vera, feared imminent bodily harm because they believed the defendant would hurt them with the knife. The wife of the defendant, on the other hand, testified that there was no way that could have happened because the knife was in the truck with her. So in light of the fact question that that testimony set up, the jury timing in having asked to see the knife very shortly into their deliberation and then returning a verdict shortly thereafter was a perfectly reasonable basis to find no prejudice. There were just two competing accounts here, really, that the jury had to decide between. And in any event, the petitioner can't come anywhere close to overcoming the presumption of reasonableness of the State habeas court ruling. I mean, if any judge could reasonably look at these facts and see just two plausible outcomes based on all the evidence, the petitioner can't overcome AEDPA. On the first part of Strickland, the ineffectiveness, you argued that defense counsel at trial could have reasonably taken an all-or-nothing strategy, saying we're going for an acquittal, which is a common, reasonable strategy. But do you see where defense counsel, can you point me at anywhere where defense counsel said that was the strategy in not requesting a robbery instruction? If I, I'm not sure I want to call it one of these. Okay, you're asking, you're saying defense counsel took an all-or-nothing strategy in not asking for a robbery instruction, right? Ultimately, yes. Okay. Can you point me to where defense counsel said that's what she was doing? So, looking at ROA 1080 to 1082, I think that's her testimony from the State habeas transcript that tracks most closely to that, and I believe it's spanning 1081 to 1082, where she talks about I'm pursuing my, what I believe was my best theory, what my witness put forth, and then the questioning goes through what would have led to acquittal. But I just also want to point out that in addressing a similar argument in the direct appeal in this case, I think it's star page 5 of the direct appeal opinion from the first court, it's 2014 Westlaw 258-2895, star 5, addressing a slightly different argument, but at least one court has already noted that the evidence and the arguments of this case were fully consistent with an all-or-nothing approach. This was not a case where the defense counsel was just putting out a hope and a prayer that the jury might not believe the State had met its burden on all the elements. I mean, there's testimony that, if believed, would have led to acquittal, the wife's testimony. If the jury had believed the wife that there's no way that this event could have happened the way the brothers described, that the knife was actually in the truck with her, it couldn't have been shown to the victims, that's acquittal. But, of course, the defendant also got the benefit of any reasonable doubt about whether the knife was a deadly weapon or not. As the State habeas court, I think, correctly pointed out, if a plain robbery instruction had been submitted, the only basis for acquittal would have been this consent theory that the wife's testimony put forth. Does it have to have, does the counsel have to have said this was my strategy or if we just say, wow, this would have been perfectly reasonable to go all-or-nothing, there's no Strickland claim here, or does the defense counsel actually have to have said that's what I was doing? No. There's no requirement that the defense counsel has to state, I am pursuing an all-or-nothing charge. In Mahia, I think it's footnote five, for example, it says, you look at the ultimate strategy and whether it was reasonable, objectively reasonable. If it's objectively reasonable, even if it's not perfectly articulated, even if there was some mistake along the way in reaching that strategy, it's reasonable performance. And just stepping back, the ultimate question, as Mahia also points out, star page 8 of the Westlaw opinion, the question is not even whether counsel performed reasonably. It's did the State habeas court think that this could be a sound strategy? And it was here. If the jury believed the wife, it would acquit. She gave testimony fully supporting the defense theory of acquittal. And it's undisputed that at least one of the goals of this defense was acquittal. I mean, if the lawyer just really screws up, it doesn't matter if he could have provided an adequate defense. Whether the lawyer made some mistake along the way is just not the ultimate question, but that's not even what we have here. We've got a lawyer who... Well, let me ask you this. Her counsel's strategy was that theft would be the lesser included offense. And that wasn't allowable under Texas law. Isn't that right? There's some discussion of this theft approach, but I think that mostly goes to initial trial strategy, formulating it. We have to look... Well, but that's what she argued to the jury in closing argument. She said that most of this is theft. She didn't argue robbery. Your Honor, she argued that at most what you have here is a case of theft if the guy on the bulldozer never got involved. Her testimony was affirmatively putting out a case of permission to take this property, not displaying a knife, multiple grounds to try to show that the victims were lying. I mean, this was not... This argument of counsel, insofar as she referenced theft, was not at all inconsistent with acquittal. Well, the theft is a little strange of a defense to me because, like you said, she put on the wife. The wife's theory is no crime at all, consent, right? Right. So where do you get theft? The theft, it seems like if you're taking the wife's testimony, there's just complete innocence of any crime. If the wife's testimony is believed, the jury acquits. It can't both be true that the knife was in Mr. Duxworth's hand being shown to the victim and also in the cab of the truck with her. I mean, I think that's a unique factor in this case. You don't always have that sort of stark dichotomy in the facts presented. You could imagine a case, perhaps, where the wife testifies, you know, he had permission. He took the pipe and I saw him. He had a knife in his hand, but he didn't threaten. He didn't come at them. He was just holding a knife. We don't have that kind of testimony here. And, you know, maybe in some cases, some testimony like that could be consistent with arguing some kind of lesser-included offense here. The theft argument was not a last-minute thought. I mean, at the charge conference, she argued for a theft jury charge, and the judge said, no, we can't do that. It's not permitted because you didn't put on any value as to what this rusty pipe was worth. So theft has an element of value, and she didn't put any evidence on that. Your Honor, I think that draws, like the district court did, the opposite presumption that should have been applied. I mean, this was not a denial of a requested charge. She withdrew the charge after an off-the-record charge conference. We know very little about it because the state habeas claim wasn't error in seeking the theft charge. That wasn't the claim. It was, should you have pursued robbery or not? And that record is just undeveloped about all of her thought processes, and we have to presume that it was reasonable, not presume that it was unreasonable just because ... Well, the other thing is, I don't think there's any evidence, correct me if I'm wrong, that she ever explained to the client that the difference between parole eligibility between robbery and aggravated robbery, isn't that right? I think it's not completely clear, but regardless of that, the question is whether she should have sought the instruction or not. The claim is not, should she have had the conversation with her client or not. Well, it's relevant to whether he'd make the decision to request robbery as a lesser-included offense, isn't it? I mean, his impression, the client's impression was it really made no difference if robbery was a lesser-included offense. The penalty was the same when parole eligibility was vastly different. But again, one of the goals of the defense was acquittal, and the district court thought acquittal was a possibility. This was not the defendant's choice to make in seeking strategy. That's not one of the choices that belonged to him, and it certainly wouldn't have been unreasonable for a lawyer to look at all the evidence and present it in the best light possible to the jury, and it wouldn't have been unreasonable for a state habeas court to look at that and think, yeah, that was reasonably sound. But again, on robbery, you can't just look ex post once we know that the aggravated robbery was unsuccessful, that he was convicted. We have to look at the time that counsel should have made this decision. Do I choose aggravated robbery and a lesser-included robbery, or do I go for acquittal based on my witness testimony? If the jury believed the only defense witness, it would have acquitted. I think it would have been unusual at best to also argue this new robbery theory that telegraphs to the jury that your only defense witness might be lying. Robbery was not consistent, totally orthogonal to the defense's only witness's testimony. If the knife is in the truck with her, it can't be being displayed to the victims. Isn't that always true of a lesser-included offense, though? There's a lesser element or one element missing out of a lesser-included offense, and to argue that, you've always got to argue in the alternative. I mean, it seems to me like your argument is saying you can never provide correct performance if you ask for a lesser-included offense. I don't think that that's true. That's not our argument, and it goes to the specific, unique circumstances of this case, of this witness. You don't always have a witness that puts forward a competing defense narrative that is materially different in the most important way from the victim's testimony. That's what makes it double-edged. Is it going to risk my shot at acquittal based on this witness's testimony? That's a strategic decision that belongs to trial counsel, and it's why she didn't perform deficiently. It was reasonable, and it was reasonable to think it was reasonable. Thank you. All right. You've reserved time for rebuttal. Mr. Schaffer? May it please the Court. I'm Randy Schaffer. It's my honor to represent Donnie Duxworth. I want to define at the outset what is not an issue in this case. First, is it the decision of defense counsel or the defendant to request a lesser-included offense? That's a really good issue. It's one the Supreme Court needs to be resolved, but this is not the case to do it. It's not implicated. Second, can defense counsel unilaterally decide not to request a lesser-included offense without advising his client? That's not in play here either. Here is what is an issue. Can defense counsel rely on his client's decision not to request a lesser that is based on counsel's erroneous explanation of the law? I say this case is akin to the involuntary guilty plea cases where courts have held guilty pleas involuntary where defense counsel gives the defendant erroneous advice regarding, for example, parole eligibility or deportation consequences. Let me tell you in a nutshell why the district court's grant of habeas corpus relief should be upheld and then we'll parse the different arguments. In a nutshell, counsel deferred to Duxworth's pretrial decision to request theft instead of robbery as an alternative to acquittal based on counsel's erroneous advice that theft was a lesser-included offense of aggravated robbery. When counsel learned at the charge conference that it was not, she did not revisit the issue with Duxworth or explain the difference in parole eligibility or tell him that she was wrong in what she had told him before trial. That's right. If the error here is the failure to include robbery as a lesser of aggravated robbery, then instead of the remedy that the district court ordered, which, as I read it, is respondent, that is the warden or the director of the Texas Department of Criminal Justice, must release Duxworth from custody unless the state initiates retrial proceedings within 180 days from the date of the final judgment of this court. So it's a release or retry remedy. Wouldn't the remedy be the one that you just suggested at your opening, which is the re-offering more akin to the plea cases where you would re-offer the plea, not, in this case, you would re-offer the lesser-included, which would be robbery, not aggravated robbery? You mean re-offer the plea bargain that he turned down? Or just allow the state to reform the sentence? It would be something less than release or retry, wouldn't it? I don't think you can get there. I think there are too many jumps in between. I think you have to give a new trial, and then whatever happens in the district court in terms of plea bargain or whatever else happens. But instead of revisiting the issue with Duxworth, the lawyer at that point, you know — Let me ask you how — let's skip over ineffectiveness and get to — and talk about prejudice for a second. Okay. How could the jury — they found aggravated robbery in 30 minutes, I think. Didn't take them long. What's the theory on which they would have found robbery but not aggravated robbery? Because robbery requires placing in fear of imminent bodily injury. If not for the knife, what would have placed the victims in that fear? Okay. Let me give you the possible scenarios under this set of facts. If the jury believed that Duxworth took the pipe without consent, made a threat, displayed the knife, and that the knife and the manner in which he displayed it was capable of causing serious bodily injury or death, that's aggravated robbery. If the jury believed he took the pipe without consent, made the threat, but did not display the knife, that's robbery. Or that he took the pipe, made the threat, displayed the knife, but based on the fact it was partially in his pocket, never came out, the complainants are more than arm's length away from him, and the manner of its use or intended use was not capable of causing serious bodily injury or death, that is robbery. Here's the problem I have. I mean, first of all, I think the fact that they found he placed them in fear of imminent bodily injury like — very likely means they found that he displayed the knife. But the other — the bigger problem is how — for them to assume there was a threat or to conclude there was a threat, they had to have believed the victims, because the victims said there was a threat. So your prejudice theory requires us to say the jury believed some of what the victims said, but that they did not believe the victims when the victims both said your client displayed a knife, which happened to be found on the truck at the gas station. Here is what counsel could have argued to allay that, because, you know, the state takes the position that, well, you know, there's just no way to argue not guilty and robbery and be credible about it. Of course there is. She could have said, you should find Mr. Duxworth not guilty because he believed the pipe had been abandoned and he didn't display the knife as his wife testified. But assuming you believe every word that the Vera brothers said, you still can't convict him of aggravated robbery, and here's why. Assuming that you believe he took the pipe without consent, that he made a threat, and that he displayed a knife, he's still only guilty of robbery because that knife was not used or exhibited as a deadly weapon based on their own testimony, where they were too far away to be injured and he didn't take it all the way out of his pocket. Now, if the jury believed the wife, which that was not going to happen, but assuming theoretically they believed the wife, they would acquit him. But — Even if — that's not even — she described not even theft, right? It's — I mean, you know, it's just not going to happen. That's why the State's argument that, well, you know, it diminished the prospects for acquittal, there were no prospects for acquittal on this set of facts. But if they believe the wife — But there is acquittal if the way the case was instructed, the government had to prove all or nothing. They had to prove aggravated robbery. So why wasn't it reasonable for the defense to say, well, look, maybe they won't get all the way there, and then we walk completely free? If the jury believed the complainants, that there was no consent and a threat, and that he displayed the knife, but the knife wasn't a deadly weapon and there was an instruction on robbery, there's a reasonable probability they would have convicted him of robbery. The charge on robbery doesn't diminish the prospects for acquittal. It protects against the prospects of the draconian consequences of a conviction for aggravated robbery. Now, here's what I want to say about prejudice. I think there's three components to prejudice you should think about. First of all, the Supreme Court recently decided, I think earlier this year, Lee v. United States. It's a guilty plea case where the issue was to show prejudice on erroneous advice that results in a guilty plea. Does the defendant have to show a reasonable probability that the outcome of the trial would have been more favorable than the guilty plea? And the Supreme Court said no. It's the deprivation of the proceeding. It's the deprivation of the opportunity for consideration that is the prejudice. You don't have to show, and indeed, you could never show, well, if I'd have had a trial, this is what would have happened. Just like I have no forum, no vehicle to show if there'd been an instruction on robbery, this is what the jury would have done, because Rule 606. What I thought the standard was to prove lack of prejudice is that the outcome would more than likely have been different. You have to prove a reasonable probability, but for the errors, the outcome would have been different. But what I'm saying, number one, is here he was deprived of an entire opportunity for a jury to consider a lesser, and the state relies heavily on the fact that the jury looks at the knife, and 20 minutes later, they convict. I think we can infer this. For the jury to want to see the knife, they had to have believed that he took the pipe without consent, which clearly, by the time he left with the pipe, he knew he didn't have consent, even if he initially thought it was abandoned. So they got past consent, and I think they got past the threat. Don't come any closer, or don't call the police, or I'll hurt you. So they wanted to look at the knife to see, well, okay, under this charge, we've either got to convict him of aggravated robbery, or we've got to send him home. And if we think he stole a pipe and threatened a guy, are we willing to send him home? Let's look at the knife. Well, maybe they looked at the knife because the victims had described its length and maybe some other features of it, so they wanted to see if it matched up with what the victims were describing. It had already been introduced in evidence. I mean, they'd seen it when it was introduced in front of them. But the fact that they returned a verdict 20 minutes after seeing the knife means absolutely nothing if there was no charge on robbery. I would concede, had there been a charge on robbery, the jury asked to see the knife, and then 20 minutes later it came back with aggravated robbery, there'd be no issue here. But without a charge on robbery, their choice, the jury's choice, was guilty or go home. Counsel, in assessing whether the trial lawyer was deficient, do you agree with your opposing counsel that the subjective state of mind or subjective strategy thoughts of the trial lawyer are irrelevant? I'm sorry, are what? Are irrelevant? Well... Purely objective inquiry, and then viewed through the so-called doubly-deferential lens of it. No, I don't agree. And I want to address their cases on this issue, because I think this is important. They take the position that defense counsel can unilaterally decide to go all or nothing on a lesser-included under Florida v. Nixon Supreme Court case. Nixon held that defense counsel can follow a particular strategy when the client who has been informed does not object. It assumes that the advice the lawyer gives is correct advice. Here, Ms. Gordon does not claim it was her decision not to request robbery. She says, I deferred to Mr. Duxworth's decision, and that decision was based on her erroneous advice. This was not an all-or-nothing case. This was a case where she intended to go for a lesser, but the lesser she intended to go for was not permissible under the law. Counsel, so Harrington v. Richter says our question is whether the counsel's performance was objectively unreasonable. So why does it matter what she subjectively thought or what she says? I understand why it's relevant to the state court in the way that they're thinking about it. I understand why they're—I understand that. But when we get to this posture, the federal posture of the case, why does it matter what the counsel said? Well, you know, obviously, if it's objectively unreasonable, it's objectively unreasonable no matter what she says. But what I'm saying here is what she says is favorable to me. Mejia and Drury—and Judge Davis was on the panel on Mejia, flipped one of these cases just this summer or a couple months ago, maybe even less, on a similar claim. Here's the difference between our case and Mejia and Drury. In those cases, defense counsel decided not to request a lesser to not diminish the possibility of an acquittal. There was no indication the client was involved in the decision. There was no indication defense counsel misunderstood the law. And I believe those cases applies where defense counsel makes a unilateral decision without the client's participation. In this case, Ms. Gordon was not going all or nothing. She recognized the implausibility of that. She was going for a lesser, but the lesser she was going for was theft, and she misunderstood the law. She gave erroneous advice that Duxworth relied on in choosing theft, and she failed to revisit the issue after learning that she was wrong. And for the same reason, the Richards case, which this Court reversed on the failure to give a jury instruction, is not distinguishable on the basis that the State contends. The State says, well, in Richards, defense counsel did not realize a lesser was even available, but here Ms. Gordon did. To me, a misunderstanding of the applicable law is just as bad as ignorance of that law. As you know, it's often the prosecutors who ask for a lesser included offense, right? I do know that, yes. Why do they do that? To hedge their bets. So why can't defense counsel go the other way and say, we're going to roll the dice and hope my client walks free, because even robbery has this stiff, very stiff penalty for robbery. You know, if defense counsel were willing to serve the time, I think that'd be great to make that decision. But whose life is it? It's the defendant's life. And here, she let him make the choice. But robbery and aggravated robbery have the exact, the punishment's the same of custody. It's the parole eligibility. It's as different as night and day. It's as different as the fact that on this set of facts, he's got to do 30 years calendar time before he comes up for parole. But had he been convicted of robbery and gotten the same sentence, he would be up for parole in seven and a half years. It's a major difference that a client's entitled to know about. And I want to address the problem with the State court findings, because I mean, we do have to jump this hurdle of, or they did the unreasonably determined the facts. Is it contrary to an unreasonable application of Strickland? So let me hit that for a second. The State court findings were really good up to the finish line. The State court found that Gordon's strategy was not guilty of misdemeanor theft based on her pretrial conversation with Duxworth. The State court found that Gordon withdrew the theft request after the State objected. The State court found that Gordon did not consider or discuss with Duxworth whether to request robbery once she found the situation had changed. And the State court found that Gordon did not explain the parole consequences. So I'm thinking, hey, this is looking good. We're going to win. Not so. Here's where they jerked the rug out from under us. The State court found that Gordon reasonably deferred to Duxworth's decision not to pursue robbery. And that totally ignores what I consider to be one of the most important parts of Gordon's testimony, which was that it was not Duxworth's fault, but her fault. And it's two questions. Page 46 of the hearing. Question. So you're not trying to blame Mr. Duxworth for your failure to request a charge on robbery, are you? Answer, no. Question. All right. That's on you. If it's wrong, it's on you, isn't it? Answer, yes. So she says in the King's English, this was on me, not on him. Yet the judge found that he made the decision. And that really skewers the testimony and unreasonably determines who made that decision. Just like an involuntary decision to plead guilty based on erroneous advice of counsel, Duxworth did not make a knowing and intelligent decision to reject the lesser on robbery based on the inaccurate advice that he could go for theft and not being advised of the parole eligibility. I want to leave you with an analogy that I think will bring this home and I think is particularly apt. Let's take it out of the context of jury instructions and let's go to something far more fundamental. Same set of facts. The conversation is, should Duxworth testify? And counsel says, well, you know, you have the right to testify, but you also have a bunch of prior convictions. And Duxworth says, well, if I testify, can they be used to impeach me? And counsel says, no, because they're 20 years old and it has to be 10 years old to be, or it's too remote, so you can testify free from impeachment.  Why? After the state rests at the charge conference, the defense lawyer says to the judge, and I just want to make sure the state's not going to use those priors to impeach Mr. Duxworth when he testifies. And the prosecutor says, judge, those priors are admissible because even though he was convicted 20 years ago, he didn't get out of prison until nine years ago. And it's not the date of the conviction that counts for purposes of the remoteness rule, it's the date of the release from prison, so they're not too remote. Here's a case. And the judge looks at it and says, prosecutor's right. And so the defense lawyer, under the state's theory, then has no duty to go back to Duxworth and say, oops, I told you wrong. If you testify, you can be impeached with these priors. Let's assume in our hypothetical the defense lawyer goes, oh, well, okay, calls Duxworth, he gets up there expecting to testify free from impeachment, he's impeached on cross with the priors, he turns and looks at his lawyer like, what? He gets convicted, and after trial, he files a writ, and rightly so, saying, my decision to testify and get impeached was based on erroneous advice of counsel. And then the defense lawyer defends it by saying, well, sure, I didn't go back and tell him I was wrong about the advice I gave him that caused him to testify, but he said he didn't testify. Now, under their theory, that's not problematic. That's not ineffective, and a state court decision that says, well, she deferred to his wishes to testify, even though it was based on erroneous advice, is not based on an unreasonable determination of the facts or an incorrect application or an unreasonable application. Is the law saying that in making jury instruction decisions, defense counsel has to consult with their client? No. And that's what I told you, like, at the outset. That's tabula rasa, but, but, in this case, she did. And I think that's what distinguishes this case from Drury, Mejia, the other, you know, unpublished opinions they cited. She involved the client. She let him participate. Let's assume she didn't have to. She did. He made the decision based on what she told him. She told him wrong. She had a constitutional duty to make it right, and she did not. I recognize the odds of winning a federal habeas from a state court conviction on ineffective assistance are probably about as good as winning the Powerball. But every once in a while, one does, and I'm due. Thank you. Thank you, Mr. Schaffer. All right, rebuttal. Thank you. So, opposing counsel has made a lot of this involvement, involving the defendant in the decision, and really, what Supreme Court case has been cited at any step here that is clearly establishing what level of involvement, if any, should have been made here. It's not in the district court opinion. It hasn't been presented at argument. It's not in the brief. I think without that, they're just, the state habeas court, at minimum, can't be faulted for thinking this was an ultimately reasonable strategic decision. And I do want to focus on the record site that I mentioned earlier. Was this strategic? I mean, the question, do you think your claim for lack of consent was a better claim to go forward on and stronger claim? Answer, yes. She also says, we were concentrating on our primary theory. Question, and in this particular case, do you think it was better to go forward strictly on the consent rather than trying to bring up the collateral issue of, I mean, the other issue of deadly weapon? Correct. I mean, that's, whatever opposing counsel thinks of that, that's strategy. And it receives deference, and the state court gave it deference, and the district court should have given that decision deference. But I do want to also focus on how putting forward this robbery theory would have affected the shot at acquittal, which I think is important to remember here. The defendant was still hoping for a shot at acquittal. So in addressing counsel's performance and her strategy, and certainly prejudice, I think you have to look at what any given strategy would have done at the shots at acquittal. So if the jury didn't believe the knife was used or exhibited as a deadly weapon, which is an issue it would have had to consider for the state to make its case and believe that it was a deadly weapon, if the jury didn't believe that, it could have bolstered the wife's story that these guys lied. If they, if the knife couldn't have been there because it was in the truck, and these guys are saying, I saw this knife, jury doesn't believe that, there's also reason to believe that they didn't really fear imminent bodily injury either. It throws open their entire story, which of course included details that the truck's license plate had been taped up, you know, that they certainly did not give this person consent to take the property. If plain robbery, I'm sorry, if the jury believed that the knife was used or exhibited as a deadly weapon, it would have obviously been damaging to the wife's testimony about the knife, but if plain robbery had been given, just plain robbery, the state could have argued for conviction even without a deadly weapon. Doing what trial counsel did here, put the state to its highest burden of proof on the most number of elements possible, so it set up that avenue for acquittal. But given the unique facts of this case and the testimony of the only defense witness, it also gave the jury a way to credit her, provide another shot at acquittal, and introducing robbery at best would have invited the jury to credit the victim's testimony over the witness. And if any lawyer could have thought it's reasonably best to be avoided to do that, there's no deficient performance. And if any judge could look at that and say, you know, that seems reasonable to me, or is at least debatable, the district court should not have granted relief. This is a classic example of double-edged consequences that in the moment when trial counsel is supposed to be making this decision, was her choice from the available options reasonable? That's all that has to be reasonable. And if there's any suggestion that, as the district court thought, that you have to pursue a lesser included because there's nothing to lose or just because one is available, that's not the law. And at star page 7 in the footnotes in Mejia, repudiates any idea. There's no basis for that, let alone clearly established federal law from the Supreme Court. So through no further questions, the court should reverse render judgment for the state. All right, thanks to counsel for the good argument. The case is submitted.